IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROL BANGURA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, ET AL. | : | NO. 07-0263 |

<u>MEMORANDUM</u>

**Padova, J.** January 7, 2009

Plaintiff Carol Bangura commenced this action pursuant to 42 U.S.C. § 1983 against nine defendants, including the City of Philadelphia (the "City"). The sole remaining claim is a <u>Monell</u> claim against the City.[1] Plaintiff alleges that the City deprived her of her substantive due process rights to custody and care of her minor child when it failed to communicate to the Philadelphia Family Court, which was handling custody proceedings involving the child, that abuse allegations against Plaintiff had been unsubstantiated. Presently before the Court is the City's Motion for Summary Judgment. We heard oral argument on the Motion on December 18, 2008. For the reasons stated below, the Motion is granted, and we enter judgment in the City's favor.

I.     BACKGROUND

On January 14, 2005, a physical confrontation occurred between Plaintiff, who was eight months pregnant, and her then-fourteen-year-old daughter ("R.L."), who was subsequently arrested and detained for assaulting Plaintiff. The following day, the police released R.L. to her biological father, Ray-James Lewis. Prior to this incident, Plaintiff had primary custody of R.L. pursuant to a Philadelphia Family Court Order dated March 16, 2001, and Lewis had only partial custody. (Def. Ex. D.)

---

[1] Plaintiff stipulated to the dismissal of her other claims against the eight other defendants.

On January 18, 2005, Lewis contacted the Philadelphia Department of Human Services ("DHS") to report that Plaintiff had been physically abusing R.L.  (See Def. Ex. C-1, at 116.)  The next day, Lewis obtained an emergency temporary custody order, giving him sole physical and legal custody over R.L.  (Def. Ex. E.)  On January 20, 2005, DHS social worker Carmita DeSeignoria-Johnson was assigned to investigate Lewis's child abuse allegations.  (DeSeignoria-Johnson Dep. at 33:14-22.)

After interviewing Plaintiff, R.L., and Lewis in February and concluding her investigation, DeSeignoria-Johnson sent a March 21, 2005 letter to Plaintiff, which notified her that DHS was closing the child abuse case but marking it "substantiated."  (Def. Ex. G.)  This "substantiated" finding, according to DeSeignoria-Johnson, represented DHS's conclusion that an incident placing R.L. at risk had occurred.  (DeSeignoria-Johnson Dep. at 64:8-24, 80:8-11.)  Plaintiff appealed (via telephone) to the DHS Commissioner, who ultimately determined the case to be unsubstantiated.  (Id. at 64:25-66:16; Def. Ex. C-1 at 114.)  DeSeignoria-Johnson's handwritten note in the DHS File states: "3/21/05 – not substantiated."[2]  (Def. Ex. C-1 at 112(A).)  A May 16, 2005 letter notified Plaintiff that her case had been changed to "unsubstantiated" due to insufficient evidence that Plaintiff had placed her daughter "at risk of serious injury."  (Def. Ex. C-2.)

A Philadelphia Family Court hearing was held on February 18, 2005, during the gap between

---

[2]As the letter from DeSeignoria-Johnson stating that the case had been marked "substantiated" and the handwritten note indicating that the Commissioner had changed the case to "unsubstantiated" are both dated March 21, 2005, the record leaves questions as to when the finding was actually changed.  (See Def. Ex. C-1, at 112(A); Def. Ex. C-2.)  DeSeignoria-Johnson's deposition does not clarify the sequence of events.  (See DeSeignoria-Johnson Dep. at 65:14-67:14.)  Plaintiff takes the position in her brief that the finding was changed to unsubstantiated on March 21, 2005, and drawing all inferences in favor of Plaintiff, we will accept that as true for purposes of assessing the City's Motion.  (Pl. Br. at 6, 10.)

the interviews in February and the substantiated letter dated March 21, 2005. At the hearing, the judge delayed adjudication of Plaintiff's petition to regain custody, explaining that she could not rule on the petition while a criminal proceeding in which Plaintiff was the complaining witness was pending against R.L. (N.T. 2/18/05, Def. Ex. I, at 11:10-18.) Notably, neither the court nor the parties ever contacted DeSeignoria-Johnson regarding any of the court proceedings. (DeSeignoria-Johnson Dep. at 28:18-25.) Moreover, the most recent court order in the record, dated June 29, 2005, stated: "DHS File does not need to be subpoenaed." (Def. Ex. J.) This same order continued the custody hearing to July 18, 2005, at which point a semi-protracted trial began. At the conclusion of the semi-protracted trial early the next year, the Family Court issued a February 14, 2006 custody order granting full legal and physical custody of R.L. to Lewis.[3]

Plaintiff commenced the instant action against the City in this Court on January 22, 2007. While the precise contours of her Monell claim against the City under 42 U.S.C. § 1983 are difficult to discern from her Amended Complaint, at oral argument, her counsel clarified that her primary claim is that she lost custody of R.L. due to DHS's "do nothing" policy of failing to promptly advise Plaintiff, or to ever advise the Family Court, that the abuse charge against Plaintiff was unsubstantiated.

---

[3] Neither party submitted record evidence of the semi-protracted trial or the final custody order. Nevertheless, these court proceedings are a matter of public record. Lum v. Bank of America, 361 F.3d 217, 222 (3d Cir. 2004) (when determining a 12(b)(6) motion, the court may generally consider matters of public record); S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir.1999) (public records include records of prior judicial proceedings). Moreover, Plaintiff referenced these proceedings in an earlier action that she brought in this Court, in which she sought relief against other parties involved in her custody dispute and proceedings. See Bangura v. City of Philadelphia, E.D. Pa., Civ. A. No. 07-127, Docket No. 57 (Third Am. Compl.) at ¶ 100, and Docket No. 33 (Second Am. Compl) at ¶¶ 67-68.

**II.   LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is appropriate if the nonmoving party fails to make a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

In evaluating the evidence, we take the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in her favor. Morton Int'l, Inc. v. A.E. Staley Mfg. Co., 343 F.3d 669, 680 (3d Cir. 2003). However, "[s]peculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." Boykins v. Lucent Techs., Inc., 78 F. Supp. 2d

402, 408 (E.D. Pa. 2000).

**III.    DISCUSSION**

As stated above, Plaintiff seeks to hold the City liable under § 1983 for violation of her right to care and custody of her minor child, and she proceeds under a Monell theory of municipal liability. Section 1983 does not create substantive rights, it merely provides "remedies for deprivations of rights established in the Constitution or federal laws."[4] Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). Therefore, in order to establish a § 1983 claim, Plaintiff must demonstrate that while "acting under color of state law," the defendant "deprived [her] . . . of a right secured by the Constitution or laws of the United States." Id. The first step in this evaluation is to "'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" Id. (quoting Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000)). The United States Supreme Court has recognized a "fundamental liberty interest of natural parents in the care, custody, and management of their child." Santosky v. Kramer, 455 U.S. 745, 753 (1982).

A municipality can only be liable under § 1983 when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body

---

[4] Section 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

or informally adopted by custom. Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Upon identifying a policy or custom, a plaintiff must establish that the municipality maintained the policy or custom with "deliberate indifference" to the constitutional deprivations that the policy or custom caused. City of Canton v. Harris, 489 U.S. 378, 389 (1989). In addition, a plaintiff must prove that the municipal policy or custom proximately caused her constitutional injuries. Beck v. City of Pittsburgh, 89 F.3d 966, 972 n.6 (3d Cir. 1996). If the causal link between the alleged policy or custom and the constitutional injury is "too tenuous," there is no need to submit the question whether the municipal policy or custom proximately caused the constitutional infringement to a jury. Watson v. Abington Twp., 478 F.3d 144, 157 (3d Cir. 2007) (quoting Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir. 1990)).

In its Motion for Summary Judgment, the City argues that Plaintiff has failed to adduce competent evidence to support a finding of §1983 municipal liability in accordance with Monell and its progeny. Specifically, the City argues that Plaintiff cannot demonstrate any of the required elements of a Monell claim: (1) a municipal policy or custom that results in constitutional infringement; (2) a widespread pattern of deliberate indifference or a failure to adequately and properly train or supervise DHS employees; and (3) a resulting denial of her constitutional rights.

    A.    The City's Alleged "Do Nothing" Policy

We agree with the City that Plaintiff has not developed any record evidence of an officially adopted policy, regulation, or decision, or an informally adopted custom that allegedly caused her a constitutional deprivation. See Monell, 436 U.S. at 694 (outlining elements of municipal liability). Plaintiff alleges that the City had a "do nothing" policy of not timely informing the courts overseeing custody proceedings or parties to those proceedings who have been accused of child abuse when

6

abuse charges against one party are found to be unsubstantiated.[5] (See Pl. Br. at 3.) However, she has produced no evidence of such a "do nothing" policy.

Plaintiff points to evidence that, in this case, DHS did not notify her that Lewis's abuse allegations had been found to be "unsubstantiated" until May 16, 2005, even though other record evidence suggests that this determination was made on March 21, 2005. See supra note 2. She also points to DeSeignoria-Johnson's deposition testimony that she had never been "consulted by the court" in Plaintiff's custody case as evidence that DeSeignoria-Johnson never advised the court of the unsubstantiated finding. (DeSeignoria-Johnson Dep. at 28:23-25.) However, these facts alone do not establish that DHS had a policy or custom of delaying its notification to individuals accused of abuse or failing to inform the court of its investigative findings. Rather, they only arguably establish that DHS did not notify the alleged abuser or inform the court of its findings in this one instance.

When prompted at oral argument to identify actual evidence of a policy or custom, Plaintiff's counsel pointed to DeSeignoria-Johnson's testimony regarding a DHS policy or procedure whereby DHS "petitions the court" to remove a child from his or her home when that child "is at risk." (Id. at 46:23-47:24.) This policy, however, is irrelevant in the instant case, where DHS found the abuse allegations against R.L. to be unsubstantiated, and took no affirmative action to remove R.L. from her home.

In sum, DHS's alleged delayed notification and failure to communicate with the Family

---

[5] In her response to the City's Summary Judgment Motion, Plaintiff also seemed to assert that the City had a policy or custom of inadequate investigation of child abuse reports, which led to her loss of custody of R.L. However, she has produced no evidence of such a policy, and at oral argument, she seemed to abandon this theory.

Court in this case only indicates DHS's conduct or inaction in this one instance; it in no way establishes a policy or custom. In the absence of any additional record evidence, Plaintiff has failed to submit facts from which a reasonable jury could find a municipal policy or custom of delay or failure of notification.[6] Thus, he has failed to establish that essential element of a Monell violation.

      B.      Causation between Policy and Violation of Constitutional Right

For a theory of municipal liability, a plaintiff must also show that the municipal policy or custom proximately caused her constitutional injury. Beck, 89 F.3d at 972 n.6. Even assuming arguendo that Plaintiff had shown that the City's conduct or inaction here resulted from a "do nothing" policy, she has not submitted record evidence from which a factfinder could reasonably infer that the City's conduct or inaction resulted in the alleged constitutional deprivation, i.e., the denial of custody over R.L.

During oral argument, Plaintiff conceded that her alleged constitutional deprivation had occurred when the Family Court ultimately granted full custody to Lewis on February 14, 2006. Plaintiff attributes this deprivation to DHS's alleged "do nothing" policy, which resulted in its failure to notify her or the Family Court in a timely manner of its "unsubstantiated" finding. Specifically, Plaintiff states in her brief that DHS's "delay in notifying Plaintiff deprived [her] of crucial evidence that she could have presented in the custody proceeding," and DHS's failure to notify the Family Court of the "unsubstantiated" finding resulted in her loss of custody "based on unfounded allegations of physical abuse." (See Pl. Br. at 5-6.)

---

[6] Needless to say, absent record evidence of an identified improper policy or custom, there can be no record evidence of the City's "deliberate indifference" to any constitutional deprivations resulting from a policy or custom.

However, these allegations are not borne out in the record. As an initial matter, the undisputed evidence of record shows that Plaintiff was advised of the "unsubstantiated" finding in May 2005, a full nine months before the final custody determination was made. Moreover, the record establishes that during the custody proceedings, the Family Court had actual notice of DHS's investigation, but chose not to consider the results of that investigation in making its custody determination. Indeed, the June 29, 2005 Family Court Order specifically states that the "DHS file does not need to be subpoenaed." (Def. Ex. J.) Accordingly, while Plaintiff alleges that she lost custody of R.L. "based on unfounded allegations of physical abuse," she concedes that the February 14, 2006 Family Court Order did not set forth its basis for denying her custody, and there is no record evidence that even suggests that the court's reason for granting primary custody to Lewis was due to any abuse allegations. To the contrary, the court's order stating that it would not subpoena the DHS file strongly suggests that the abuse allegations and their resolution were completely irrelevant to its decision.

Under these circumstances, there is no factual basis in the record from which a factfinder could reasonably conclude that the court's final custody determination was in any way influenced by its apparent lack of knowledge of the unsubstantiated finding. Consequently, Plaintiff has not adduced sufficient competent evidence that connects DHS's activities to the Family Court's denial of custody and her Monell claim fails for that additional reason.[7]

---

[7] This case is completely unlike Croft v. Westmoreland County Children & Youth Servs., 103 F.3d 1123 (3d Cir. 1997), on which Plaintiff relies. In Croft, the court reversed a summary judgment holding on a Monell claim against a local children's bureau, which had required that the father leave his home during the bureau's abuse investigation, even though the bureau lacked reasonable grounds to believe that the father's child was in imminent danger of abuse. Id. at 1124-27. As the court explained, the bureau's actions in that regard directly interfered with the father's constitutional right

## IV. CONCLUSION

For the foregoing reasons, we find that Plaintiff has failed to fulfill her burden to present sufficient evidence of a City policy or custom, much less evidence from which a reasonable factfinder could conclude that DHS's conduct pursuant to any such policy or custom caused her to lose custody of her child. We therefore grant the City's Motion for Summary Judgment and enter judgment against Plaintiff on her Monell claim against the City.

An appropriate Order follows.

---

to familial integrity. Id. at 1127. Here, in contrast, no evidence supports the claim that DHS's conduct actually affected Plaintiff's constitutional rights.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROL BANGURA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, ET AL. | : | NO. 07-0263 |

**ORDER**

**AND NOW**, this 7th day of January, 2009, upon consideration of the Motion for Summary Judgment filed by Defendant City of Philadelphia (Docket No. 24), and Plaintiff's response thereto, and following oral argument held on December 18, 2008, **IT IS HEREBY ORDERED** that:

1. The Motion is **GRANTED**.

2. **JUDGMENT IS ENTERED** in favor of Defendant City of Philadelphia and against Plaintiff.

3. The Clerk of Court shall **CLOSE** this matter statistically.

BY THE COURT:

/s/ John R. Padova, J.
John R. Padova, J.